**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **FINTIV, INC.,** | § | |
| | § | **Civil Action No.: 6:18-CV-372-ADA** |
| | § | |
| **Plaintiff,** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **v.** | § | |
| | § | |
| **APPLE INC.,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE**
**UNDER 28 U.S.C. § 1404(a)**

## <u>TABLE OF CONTENTS</u>

Page

I.      INTRODUCTION ................................................................................................ 1

II.    ARGUMENT ...................................................................................................... 2

      A.     The Private Interest Factors Weigh Against Transfer .............................. 2

              1.     Factor 1:  Ease of Access to Sources of Proof Weighs Against
                      Transfer ........................................................................................ 2

              2.     Factor 2:  The Availability of Compulsory Process in WDTX
                      Weighs Against Transfer ............................................................... 4

              3.     Factor 3:  WDTX is More Convenient for Willing Witnesses ................. 7

              4.     Factor 4:  Other Practical Problems .......................................... 9

      B.     The Public Interest Factors Weigh Against Transfer .............................. 9

              1.     Factor 1:  Faster Disposition in This District Weighs Against
                      Transfer ........................................................................................ 9

               2.     Factor 2:  This District's Localized Interest Weighs Against
                      Transfer ...................................................................................... 10

              3.     Factors 3 and 4:  Other Public Interest Factors ...................................... 10

III.   CONCLUSION ............................................................................................... 10

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*ADS Sec. L.P. v. Advanced Detection Sec. Servs., Inc.*,
No. A-09-CA-773-LY, 2010 WL 1170976 (W.D. Tex. Mar. 23, 2010) ..................................8

*AdvanceMe, Inc. v. RapidPay LLC*,
450 F. Supp. 2d 669 (E.D. Tex. 2006) .....................................................................................2

*In re BigCommerce, Inc.*,
890 F.3d 978 (Fed. Cir. 2018) ................................................................................................10

*Collaborative Agreements, LLC v. Adobe Systems Inc.*,
No. 1-14-CV-356, 2015 WL 10818739 (W.D. Tex. Aug. 21, 2015) .......................................9

*CXT Sys., Inc. v. Container Store, Inc.*,
No. 2:18-CV-00173-RWS-RSP, 2019 WL 1506015 (E.D. Tex. Apr. 5, 2019) ......................3

*DataQuill, Limited v. Apple Inc.*,
No. A-13-CA-706-SS, 2014 WL 2722201 (W.D. Tex. June 13, 2014) ..................................9

*Data Scape Limited v. Dell Technologies Inc. et al.*,
No. 6:19-cv-00129, ECF No. 44 (W.D. Tex. June 7, 2019) ....................................................1

*East Tex. Boot Co., LLC v. Nike, Inc.*,
No. 2:16-cv-0290-JRG-RSP, 2017 WL 2859065 (E.D. Tex. Feb. 15, 2017)...........................7

*Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.*,
867 F. Supp. 2d 859 (E.D. Tex. 2012) .....................................................................................7

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009) ...............................................................................................9

*In re Hoffmann-La Roche Inc.*,
587 F.3d 1333 (Fed. Cir. 2009).........................................................................................5, 10

*Polaris Innovations Limited v. Dell, Inc.*,
No. SA-16-CV-451-XR, 2016 WL 7077069 (W.D. Tex. Dec. 5, 2016) ................................9

*Potter v. Cardinal Health 200, LLC.*,
No. 2:19-CV-00007-JRG, 2019 WL 2150923 (E.D. Tex. May 16, 2019) .............................3

*Uniloc USA, Inc. v. Apple Inc.*,
No. 1:18-cv-00164-LY, ECF No. 52 (W.D. Tex. Mar. 28, 2019) ...........................................9

*Uniloc USA Inc. v. Samsung Elecs. Am., Inc.*,
  No. 2:16-cv-00642, ECF No. 216 (E.D. Tex. Apr. 19, 2017) ..................................................2

*Via Vadis, LLC v. Netgear, Inc.*,
  No. A-14-CV-809-LY, 2015 WL 10818675 (W.D. Tex. July 30, 2015) ...............................9

*In re Volkswagen AG*,
  371 F.3d 201 (5th Cir. 2004) ...........................................................................................6, 7

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) (en banc) ................................................................................5

*Weatherford Tech. Holdings, LLC v. Tesco Corp.*,
  No. 2:17-CV-00456-JRG, 2018 WL 4620636 (E.D. Tex. May 22, 2018) .............................3

*Wet Sounds, Inc. v. Audio Formz, LLC.*,
  No. A-17-CV-141-LY, 2017 WL 4547916 (W.D. Tex. Oct. 11 2017).................................9

**Statutes**

Fed. R. Civ. P. 32(a)(4) ....................................................................................................8

Plaintiff Fintiv, Inc. ("Fintiv") respectfully files this opposition to Defendant Apple, Inc.'s ("Apple") Motion to Transfer Venue Under 28 U.S.C. § 1404(a) ("Motion") and shows:

## I.   <u>INTRODUCTION</u>

Apple fails to satisfy its heavy burden of proving that the Northern District of California ("NDCA") is a **clearly more convenient** forum than the Western District of Texas ("WDTX"). Recognizing the uphill battle it faces with arguing that a transfer of this action to NDCA is appropriate, in the alternative, Apple states that it would be willing to accept a transfer to the Austin Division of this District, which Apple admits "is clearly more convenient for both parties." Dkt. 40 at p. 10.  Fintiv is willing to agree to a transfer of this action to the Austin Division as requested by Apple consistent with this Court's prior decision in *Data Scape Limited v. Dell Technologies Inc. et al.*, No. 6:19-cv-00129, ECF No. 44 (W.D. Tex. June 7, 2019).  Ex. CC.[1]

Despite Apple's assertions to the contrary, a wealth of relevant evidence and witnesses are located in this District, including all of Fintiv's relevant documents and key witnesses, a multitude of documents and at least ten witnesses from third-party suppliers NXP Semiconductors N.V. ("NXP") and STMicroelectronics ("STMicro"), who design and manufacture a relevant component (NFC chip) used in part to implement the Apple Pay and Apple Wallet accused functionality, and documents and witnesses from numerous banks that Apple has worked with in order to facilitate Apple Wallet.  Further, Apple maintains dozens of employees in the Austin area with relevant knowledge of the Apple Pay and Wallet systems, and Apple's website also lists numerous full-time job openings in Austin related to Apple Pay and Wallet.  Apple's transparent attempt to minimize its significant connections to this District should be disregarded.  Apple

---

[1] "Ex.__" refers to Exhibits to the Declaration of Jonathan K. Waldrop ("Waldrop Decl.") filed concurrently herewith.

maintains a 1.1 million square foot campus in Austin where it currently employs more than 6,200 people, with plans to expand using upwards of $33 million in Texas taxpayer dollars to become the largest private employer in Austin.

## II.   ARGUMENT

### A.   The Private Interest Factors Weigh Against Transfer

Factor 1: Ease of Access to Sources of Proof Weighs Against Transfer:  Apple contends that its "sources of proof in this case are heavily located in NDCA" and that "Apple has no unique, relevant sources of proof in WDTX."  Dkt. 40 at pp. 6-7.  However, Apple fails to identify with specificity any hard copies of documents that are located in NDCA, and makes no argument whatsoever that it would be difficult to access these documents from its Austin campus, let alone that it is unable to access electronic documents from there.  Dkt. 40 at pp. 6-7; Ex. A.  Even assuming that relevant information exists only as hard copies, Apple fails to present proof of any hardship or significant inconvenience associated with producing these documents via scanned copies, electronic storage, or email.  *See AdvanceMe, Inc. v. RapidPay LLC*, 450 F. Supp. 2d 669, 675 (E.D. Tex. 2006).  In fact, Apple admits that "documents generated concerning Apple Wallet [] **reside on local computers and servers** located in or near Cupertino, California."  Dkt. 40-1 at ¶ 18 (emphasis added).  As such, the location of Apple's documents and the distance that the documents must be transported to trial is of little consequence because in the modern age, remote access to documents stored on servers is commonplace and can be made available at the click of a mouse.  *Uniloc USA Inc. v. Samsung Elecs. Am., Inc.*, No. 2:16-cv-00642, ECF No. 216 at 8-9 (E.D. Tex. Apr. 19, 2017).  Ex.DD.

Further, contrary to Apple's contentions,[2] it maintains over 40 employees in Austin with direct experience and relevant knowledge regarding Apple Pay and Wallet (*e.g.*, Ruotao Wang, a Design Verification Engineer based in Austin who worked on a project titled "Design, Verification and Testing of a Multifunctional NFC Transponder Chip"[3]).  Ex. B.  Apple's website also lists numerous full-time job openings in Austin related to Apple Pay and Wallet, including at least the following: software development engineers, application engineers, iOS Wallet and Apple Pay engineers, global business operations managers, senior program managers, and business development managers.  Ex. C.  In addition, during a 2016 interview with *Fortune*, Apple's Senior Vice President of Hardware Technology, Johny Srougi,[4] stated that his 500 person team, is "Apple's biggest research and development group outside of its Cupertino, Calif., headquarters" and that it "play[s] a very critical and integral role – they are designing chips that go into all the devices [Apple] sell[s]" and that "[t]he chip development work they do goes into hundreds of millions of devices every year."  Ex. D.

Apple's presence in this District will only continue to grow.  In December 2018, Apple announced "a major expansion of its operations in Austin, including an investment of $1 billion to build a new campus in North Austin."  Ex. F.  Apple's new 133-acre Austin campus, located less than a mile from its existing facilities, "will initially accommodate 5,000 additional employees,

---

[2] "[W]hen deciding a motion to transfer venue under § 1404(a), the court may consider undisputed facts outside of the pleadings such as affidavits or declarations but it must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party."  *Weatherford Tech. Holdings, LLC v. Tesco Corp.,* No. 2:17-CV-00456-JRG, 2018 WL 4620636, at *2 (E.D. Tex. May 22, 2018); *accord Potter v. Cardinal Health 200, LLC.,* No. 2:19-CV-00007-JRG, 2019 WL 2150923, at *2 (E.D. Tex. May 16, 2019); *CXT Sys., Inc. v. Container Store, Inc.,* No. 2:18-CV-00173-RWS-RSP, 2019 WL 1506015, at *1 (E.D. Tex. Apr. 5, 2019).
[3] As explained below, NFC chips implement the accused functionality.
[4] According to his LinkedIn Profile, Mr. Srougi has been Apple's Senior Vice President of Hardware Technology since December 2015.  Ex. E.

with the capacity to grow to 15,000, and is expected to make Apple the largest private employer in Austin." *Id.* "Jobs created at the new campus will include a broad range of functions including engineering, R&D, operations, finance, sales and customer support [and] at 6,200 people, Austin already represents the largest population of Apple employees outside Cupertino." *Id.*

All of Fintiv's documents concerning the '125 Patent and its business operations are located in or accessible from its principal place of business in this District located at 801 Barton Springs, Austin, Texas 78704.   Declaration of David Gibson ("Gibson Decl.") at ¶¶ 3, 5.  Fintiv has been conducting business from Austin since June 2012.[5]  *Id.* at ¶ 4.  Fintiv does not maintain any offices, facilities, or employees in California.  *Id.* at ¶ 9.  In fact, Fintiv does not maintain any offices or facilities in the United States other than in Austin.  *Id.* at ¶ 3.  Fintiv has six employees who work in its Austin office including its President, Mike Love.  *Id.* at ¶ 6.  The Fintiv employees who are most knowledgeable about its licensing practices include (1) Mike Love, who works out of Fintiv's Austin office, (2) Charlie Wiggs (Sales Executive), who works remotely from his home in St. Louis, Missouri, and (3) David Luther (Sales Consultant), who works remotely from his home in Atlanta, Georgia.  *Id.* at ¶ 7.  Each of Fintiv's anticipated witnesses either reside in or around Austin or are willing to voluntarily appear in this District for trial.  *Id.* at ¶ 8.

Additionally, as explained below, relevant evidence will be obtained from numerous third parties in this District .  Exs. G-J.

Factor 2: Availability of Compulsory Process in WDTX Weighs Against Transfer: Because at least 10 specific individual third-party witnesses are subject to the compulsory process of this District, this factor strongly weighs against transfer.[6]

---

[5] Fintiv and its predecessors have been conducting business in Texas since 2004.  *Id.* at ¶ 4.
[6] This factor considers the availability of compulsory process to secure the attendance of relevant third-party witnesses at trial and weighs in favor of transfer when the transferee venue is said to

According to Apple's own literature, an "NFC controller," which "handles Near Field Communication protocols and routes communication between the application processor and the Secure Element, and between the Secure Element and the point-of-sale terminal" is a key component of Apple Pay.  Ex. K.  NXP, a semiconductor manufacturer headquartered in the Netherlands, supplies NFC controllers used in Apple's iPhones and Watches.  Ex. L.[7]  NXP's U.S. corporate headquarters are located in Austin, where it maintains its largest U.S. presence.  Exs. G & N.  NXP also "owns and operates three wafer fabrication facilities in the U.S., two of which are in Austin."  Ex. G.  NXP has 5,000 employees in Austin, including potential key witnesses such as Kenny Huang, a software engineer – microcontroller solutions who programs NFC and chip readers, and Ran Tang, who worked on a "Simplified Secure IoT Deployment (Demo with NFC Tap to Pair)" for NXP.  Exs. N-P.  Given that NXP manufactures and supplies NFC controllers, a relevant component related to the claims of the '125 Patent to Apple, Messrs. Huang and Tang, and other NXP software engineers, hardware engineers, designers, business developers, product marketers, and salespersons will have relevant knowledge about the technology accused in this case, and they are expected to provide testimony that supports Fintiv's allegations concerning how the NFC controllers in Apple's iPhones and Watches infringe the '125 Patent, which will likely be necessary to verify any discovery provided by Apple concerning the functionality of these devices.[8]

---

have "absolute subpoena power" over such third-party witnesses.  *In re Volkswagen of Am., Inc.,* 545 F.3d 304, 316 (5th Cir. 2008) (en banc).  The Federal Circuit has held that "absolute subpoena power" is the subpoena power for both depositions and trial.  *In re Hoffmann-La Roche Inc.,* 587 F.3d 1333, 1338 (Fed. Cir. 2009).

[7] Indeed, on its website, NXP identifies Apple as one of its "Largest OEM Customers."  Ex. M.

[8] The following NXP employees in Austin also have experience with NFC:  (1) Kyle Fox, Director – i.MX and Advanced Processor Technologies; (2) Robert Hill, Technical Sales Engineer; and (3) Jose Correa, Strategic Partnerships Banking – Americas.  Ex. Q.  NXP's Chief Executive Officer is also located in Austin.  Ex. R.

STMicro, a semiconductor manufacturer headquartered in Geneva, Switzerland, also supplies NFC components used in Apple's XS iPhones, and its U.S. headquarters are located in nearby Coppell, Texas.  Exs. H, S.  STMicro also has employees in Austin with information relevant to the infringing functionality including (1) Sean Newton (Microcontroller Applications Manager), (2) Jeff Blauser (Senior Field Application Engineer), (3) Luca Spelgatti (Field Application Engineer), (4) Joe Tijerina (Field Applications Engineer), and (5) Steve Miller (Staff Engineer II).  Ex. T.  Thus, this District is far more convenient than NDCA for third-party witnesses from STMicro with relevant knowledge of the functionality accused in this case who either reside in Austin or near STMicro's U.S. headquarters in Coppell, Texas, which is located just 115 miles from Waco.  Ex. U; *In re Volkswagen AG*, 371 F.3d 201, 204-05 (5th Cir. 2004).

Also according to Apple's own literature, "Wallet," which is "used to add and manage credit, debit, and store cards and to make payments with Apple Pay," is another key component of Apple Pay.  Ex. K.  Apple Pay enables users to add credit and debit cards to Wallet, including those issued by banks with headquarters in this District such as Frost Bank and USAA.  Exs. V, I-J.  Apple also worked with three banks that maintain headquarters in Dallas, Texas, which is located within 100 miles of this Court and within the Court's absolute subpoena power.  Ex. W.  There are also four other banks that partnered with Apple with headquarters that are located within 165 miles of this District.  Ex. X.

Unlike the relevant third-party witnesses identified by Fintiv with actual knowledge of the functionality accused in this case, Apple's "potential" third-party prior art inventors appear to be cherry-picked more because they support its Motion to Transfer rather than for their relevance to this case.  Moreover, as courts have recognized, "[i]t is highly unlikely that prior art inventors will testify at trial, therefore, the weight afforded their presence in the transfer analysis will be

minimal." *East Tex. Boot Co., LLC v. Nike, Inc.*, No. 2:16-cv-0290-JRG-RSP, 2017 WL 2859065, at *4 (E.D. Tex. Feb. 15, 2017).  Although Apple lists three prior art references, it does not state that it intends to rely on any of them.  In any case, given that Apple was free to select the alleged prior art it would raise (and omit) in its Motion, Apple's potential prior art witnesses located in the Northern District of California should be given little, if any, weight.

Factor 3: WDTX is More Convenient for Willing Witnesses:  The cost of attendance for key willing witnesses also weighs strongly against transfer.  *See Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.*, 867 F. Supp. 2d 859, 870 (E.D. Tex. 2012).  Fintiv's key party witnesses are located in this District or willing to appear for trial in this District.  Gibson Decl. at ¶¶ 7-8. Mike Love and David Gibson work in Fintiv's Austin office.  *Id*. at ¶ 6.  Charlie Wiggs and David Luther reside and work from their respective home offices located in St. Louis, Missouri, and Atlanta, Georgia, both of which are more conveniently located to this District than NDCA, and both are willing to appear for trial either in Waco or Austin.  *Id*. at ¶¶ 7-8; *In re Volkswagen AG*, 371 F.3d at 204-05.

Apple contends that this case should be transferred, in part, because the six employees it unilaterally identified in its Motion as "***likely*** Apple witnesses with knowledge of the development, design, implementation, and product marketing of the Accused Technology are located in NDCA." Dkt. 40 at p. 8 (emphasis added).  However, Apple does not even allege that these six witnesses will actually provide deposition or trial testimony, let alone confirm that they will be Apple's **key** witnesses.  Apple also summarily dismisses the notion that there may be potential witnesses in this District who have relevant information relating to the research, design, marketing, development,

maintenance, and/or sales of the products and functionality accused in this case.[9]  Dkt. 40-1 at ¶¶ 12-17.  Instead, Apple asserts that its "management, research and development, and marketing teams are **primarily** located in [NDCA]," the "**primary** operation, marketing, and finance decisions for Apple also occur in [NDCA]," "the **primary** design, development, and implementation of Apple Wallet (formally called Apple Passbook) takes place in or around [NDCA]", and its "employees knowledgeable about the relevant design and operation of Apple Wallet, including research and development, work **primarily** at facilities in [NDCA]."  Dkt. 40-1 at ¶¶ 5 & 10 (emphasis added).  Apple's assertion that its potential witnesses are "primarily" located in NDCA is carefully couched so as not to deny the fact that there are potential witnesses in Austin.

Nonetheless, as other courts applying Fifth Circuit venue law have noted, the convenience of a party witness is given little weight.  *ADS Sec. L.P. v. Advanced Detection Sec. Servs., Inc.*, No. A-09-CA-773-LY, 2010 WL 1170976, at *4 (W.D. Tex. Mar. 23, 2010), *report and recommendation adopted* A-09-CA-773-LY, ECF No. 20 (W.D. Tex. Apr. 14, 2010).  Apple also fails to offer any particularized information that would enable the Court to ascertain how much weight is to be given to the claim of inconvenience to its employees, and fails to show how the testimony of these six individuals is not cumulative or why they would be forced to travel to Texas at all, rather than be deposed wherever they reside.  *See* Fed. R. Civ. P. 32(a)(4).

Moreover, the vast majority of cases cited by Apple do not support its arguments because

---

[9] As discussed above, Apple maintains dozens of engineering, design, development, business operations, and technical support employees in Austin responsible for Apple Pay and Wallet.  Exs. B & Y.  And according to Apple's website, Apple has several job postings for full-time positions in Austin related to Apple Pay and Wallet.  Ex. C.  Apple also admits that it maintains data scientists that interface with its Apple Pay teams in NDCA, and that their data scientist are responsible for fraud detection in connection with the Apply Pay card provisioning process.  Dkt. 40-1 at ¶ 16.

they involved foreign plaintiffs with no connection to this District.[10]  Unlike the cases proffered by Apple, Fintiv maintains its principal place of business in Austin and has key witnesses in Austin, at least 10 relevant third-party witnesses are within the compulsory power of this District, third-party witnesses at STMicro's headquarters in Coppell are located just over 100 miles from this Court, Apple can access its relevant documents from its Austin campus, potential Apple employees with relevant knowledge are located in Austin, and WDTX has a localized interest in this case.

Factor 4: Other Practical Problems:  This factor is neutral.

**B.     The Public Interest Factors Weigh Against Transfer**

Factor 1: Faster Disposition in This District Weighs Against Transfer:  Apple recognizes that "a less congested Waco Division docket will likely change the statistics" and claims that

---

[10] For example, in *Polaris Innovations Limited v. Dell, Inc.*, plaintiff was an Irish company and a wholly-owned subsidiary of Wi-LAN, Inc., a Canadian corporation based in Ottawa where most of plaintiff's relevant documents and witnesses were located and plaintiff did not have a presence in its chosen venue.  No. SA-16-CV-451-XR, 2016 WL 7077069 (W.D. Tex. Dec. 5, 2016).  In *Uniloc USA, Inc. v. Apple Inc.*, (1) plaintiffs, a Luxembourg entity with its principal place of business in Luxembourg and a U.S. entity headquartered in Irvine, California, with its principal place of business in Newport Beach, California, and offices outside of WDTX, had witnesses who resided in California, (2) there were no relevant third-party witnesses within compulsory-process range, and (3) plaintiffs did not identify any of their own witnesses in WDTX.  No. 1:18-cv-00164-LY, ECF No. 52 (W.D. Tex. Mar. 28, 2019).  Ex. EE.  In *DataQuill, Limited v. Apple Inc.*, (1) plaintiff, a British Virgin Islands-based company, did not identify any witnesses residing in this District, (2) plaintiff had no presence in Austin, and (3) WDTX did not have a local interest in the case.  No. A-13-CA-706-SS, 2014 WL 2722201 (W.D. Tex. June 13, 2014).  In *In re Genentech, Inc.*, plaintiff was a German company and plaintiff's chosen venue, the Eastern District of Texas, had no connection to any of the witnesses or evidence relevant to the case.  566 F.3d 1338, 1340-41 (Fed. Cir. 2009).  In *Via Vadis, LLC v. Netgear, Inc.*, plaintiffs were a Luxembourg company and a Virginia entity with their principal places of business in Luxembourg and they did "not identify a single witness or piece of evidence relevant to this case that [was] connected to or located where this suit [was] pending – Austin, Texas in [WDTX]."  No. A-14-CV-809-LY, 2015 WL 10818675, at *2 (W.D. Tex. July 30, 2015).  In addition, in *Wet Sounds, Inc. v. Audio Formz, LLC*, the WDTX transferred the case to the Eastern District of Texas because both plaintiff and defendant maintained their principal places of business in the Eastern District of Texas.  No. A-17-CV-141-LY, 2017 WL 4547916 (W.D. Tex. Oct. 11 2017).  In *Collaborative Agreements, LLC v. Adobe Systems Inc.*, plaintiff could only identify a single third-party witness located in WDTX.  No. 1-14-CV-356, 2015 WL 10818739, at *4 (W.D. Tex. Aug. 21, 2015).

NDCA has a shorter median time to trial for patent cases than WDTX by four months.  Dkt. 40 at p. 9.  However, the United States District Court statistics for the 12-month period that ended March 31, 2019, indicate that the median time for cases to go from filing to trial in NDCA is 28.4 months compared to 25.7 months in this District.  Ex. Z.

Factor 2: This District's Localized Interest Weighs Against Transfer:  The Western District of Texas has a significant localized interest in this dispute.  Fintiv's principal place of business – and only office in the United States – is located in Austin, where it maintains employees, including the President of the company.  *In re BigCommerce, Inc.*, 890 F.3d 978, 985 (Fed. Cir. 2018); Gibson Decl. at ¶¶ 3, 6.  Apple's second largest campus in Austin is also located in this District and according to its own press release, "[a]t 6,200 people, Austin already represents the largest population of Apple employees outside Cupertino."  Ex. F; *In re Hoffmann-La Roche, Inc.*, 587 F.3d at 1336.  Further, Apple has received over $21 million in incentives for its Austin campus paid for by local and state taxpayers and those taxpayers have an interest in the business they have helped to develop.  Ex. AA.  Apple is also expected to receive upwards of $33 million of Texas taxpayer dollars for its new 133-acre campus and become "the largest private employer in Austin."  Ex. BB.  Accordingly, this District's significant local interest in the disposition of this case weighs against transfer.

Factors 3 and 4: Other Public Interest Factors:  These factors are neutral.

## III.   **CONCLUSION**

For the foregoing reasons, Apple's motion to transfer this case to NDCA should be denied.  Alternatively, should any transfer be entertained, it should be to the Austin Division of WDTX and remain with this Court and proceed to trial on the same recently-entered Scheduling Order and Order Governing Proceedings.

-10-

Dated:  July 5, 2019                              RESPECTFULLY SUBMITTED,

                                                  By:  */s/ Jonathan K. Waldrop*
                                                        J. Mark Mann (Texas Bar No. 12926150)
                                                        mark@themannfirm.com
                                                        G. Blake Thompson (Texas Bar No. 24042033)
                                                        blake@themannfirm.com
                                                        **MANN | TINDEL | THOMPSON**
                                                        300 W. Main Street
                                                        Henderson, Texas 75652
                                                        913 Franklin Ave., Suite 201
                                                        Waco, Texas 76701
                                                        Telephone:  (903) 657-8540
                                                        Facsimile: (903) 657-6003

                                                        Andy Tindel (Texas Bar No. 20054500)
                                                        atindel@andytindel.com
                                                        **MANN | TINDEL | THOMPSON**
                                                        112 E. Line Street, Suite 304
                                                        Tyler, Texas 75702
                                                        Telephone: (903) 596-0900
                                                        Facsimile: (903) 596-0909

                                                        Craig D. Cherry (Texas Bar No. 24012419)
                                                        ccherry@haleyolson.com
                                                        **HALEY & OLSON, P.C.**
                                                        100 N. Ritchie Road, Suite 200
                                                        Waco, Texas 76701
                                                        Telephone: (254) 776-3336
                                                        Facsimile: (254) 776-6823

                                                        Jonathan K. Waldrop (CA Bar No. 297903)
                                                        (Admitted in this District)
                                                        jwaldrop@kasowitz.com
                                                        Darcy L. Jones (CA Bar No. 309474)
                                                        (Admitted in this District)
                                                        djones@kasowitz.com
                                                        Marcus A. Barber (CA Bar No. 307361)
                                                        (Admitted in this District)
                                                        mbarber@kasowitz.com
                                                        John W. Downing (CA Bar No. 252850)
                                                        (Admitted in this District)
                                                        jdowning@kasowitz.com
                                                        Heather S. Kim (CA Bar No. 277686)
                                                        (Admitted in this District)
                                                        hkim@kasowitz.com
                                                        Jack Shaw (CA Bar No. 309382)
                                                        (Admitted in this District)
                                                        jshaw@kasowitz.com
                                                        Gurtej Singh (CA Bar No. 286547)
                                                        (Admitted in this District)
                                                        gsingh@kasowitz.com

**KASOWITZ BENSON TORRES LLP**
333 Twin Dolphin Drive, Suite 200
Redwood Shores, California 94065
Telephone: (650) 453-5170
Facsimile: (650) 453-5171

Daniel C. Miller (NY Bar No. 4232773)
(Admitted in this District)
**KASOWITZ BENSON TORRES LLP**
1399 New York Avenue NW, Suite 201
Washington, DC  20005
Telephone:  (202) 760-3400
Facsimile:   (202) 760-3401
Email: dcmiller@kasowitz.com

Rodney R. Miller (Texas Bar No. 24070280)
(Admitted in this District)
**KASOWITZ BENSON TORRES LLP**
1349 West Peachtree Street N.W., Suite 1500
Atlanta, Georgia 30309
Telephone: (404) 260-6080
Facsimile: (404) 260-6081
Email: rmiller@kasowitz.com

**Attorneys for Plaintiff**
**FINTIV, INC.**

## <u>CERTIFICATE OF SERVICE</u>

A true and correct copy of the foregoing instrument was served or delivered electronically via U.S. District Court [LIVE] — Document Filing System, to all counsel of record, on this 5th day of July, 2019.

*/s/ Jonathan K. Waldrop*
Jonathan K. Waldrop
