# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

FINTIV, INC.,               §

                               §     Civil Action No.: 6:18-CV-372-ADA

                               §

          Plaintiff,       §

                               §      **JURY TRIAL DEMANDED**

v.                      §

                               §

APPLE INC.,             §

                               §

          Defendant.     §

                               §

## PLAINTIFF FINTIV, INC.'S OPENING CLAIM CONSTRUCTION BRIEF

## <u>TABLE OF CONTENTS</u>

**Page**

I.     INTRODUCTION ................................................................................................. 1

II.    BACKGROUND ................................................................................................... 1

    A.     The '125 Patent ....................................................................................... 1

    B.     The Accused Apple Devices .................................................................... 2

III.   LEGAL PRINCIPLES ......................................................................................... 2

IV.    THE DISPUTED CLAIM TERMS ...................................................................... 4

    A.     "wallet management applet (WMA)" (Claims 11 and 23) ..................... 5

    B.     "widget" (all asserted claims) ............................................................... 10

    C.     "mobile wallet application" (all asserted claims) ................................. 11

    D.     "SE information" (Claims 14 and 23) .................................................... 13

    E.     "mobile device information" (Claims 14, 18, and 23) ........................... 14

    F.     "over-the-air (OTA) proxy" (Claim 23) and "OTA proxy" (claim 16) .............. 15

    G.     "provision[ing]" (Claims 11 and 23) .................................................... 17

V.     CONCLUSION .................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ArcelorMittal France v. AK Steel Corp.*,
    700 F.3d 1314 (Fed. Cir. 2012)....................................................................................4

*Comark Commc'ns, Inc. v. Harris Corp.*,
    156 F.3d 1182 (Fed. Cir. 1998)....................................................................................3

*Epos Techs. Ltd. v. Pegasus Techs. Ltd.*,
    766 F.3d 1338 (Fed. Cir. 2014)....................................................................................4

*Finjan, Inc. v. Secure Computing Corp.*,
    626 F.3d 1197 (Fed. Cir. 2010)....................................................................................5

*GE Lighting Sols., LLC v. AgiLight, Inc.*,
    750 F.3d 1304 (Fed. Cir. 2014)....................................................................................4

*Int'l Biomedical, Ltd. v. Gen. Elec. Co.*,
    No. 1-14-CV-397-LY, 2015 WL 7431408 (W.D. Tex. Nov. 20, 2015)....................7

*Johnson Worldwide Assocs. v. Zebco Corp.*,
    175 F.3d 985 (Fed. Cir. 1999)......................................................................................3

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
    358 F.3d 898 (Fed. Cir. 2004)....................................................................................11

*Markman v. Westview Instruments, Inc.*,
    52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996) ..................2, 13

*Meetrix IP, LLC v. Citrix Sys., Inc.*,
    No. 1:16-CV-1033-LY, 2017 WL 5986191 (W.D. Tex. Dec. 1, 2017) ................3, 4

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (en banc)..............................................2, 3, 4, 15

*Pisony v. Commando Construction, Inc.*,
    W-17-CV-00055-ADA, 2019 WL 928406 (W.D. Tex. Jan. 23, 2019) .......................... *passim*

*SunRace Roots Enter. v. SRAM Corp.*,
    336 F.3d 1298 (Fed. Cir. 2003)....................................................................................7

*Superguide Corp. v. DirecTV Enter., Inc.*,
    358 F.3d 870 (Fed. Cir. 2004)..................................................................................9, 15

*SynQor, Inc. v. Artesyn Techs., Inc.*,
    709 F.3d 1365 (Fed. Cir. 2013)....................................................................................4

*Thorner v. Sony Computer Entm't Am. LLC*,
    669 F.3d 1362 (Fed. Cir. 2012)...............................................................................................3

*U.S. Surgical Corp. v. Ethicon, Inc.*,
    103 F.3d 1554 (Fed. Cir. 1997)................................................................................... *passim*

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996)..............................................................................................3

*Watts v. XL Sys., L.P.*,
    No. 1:06-cv-653-LY, 2008 WL 5731945 (W.D. Tex. July 1, 2008) .......................................3

## I.    <u>INTRODUCTION</u>

Plaintiff Fintiv, Inc. ("Fintiv") asserts U.S. Patent No. 8,843,125 (the "'125 Patent" or "Patent-in-Suit") against Defendant Apple Inc. ("Apple").  Fintiv contends that Apple's iPhone and Watch devices utilizing Apple's mobile wallet application infringe the '125 Patent.

Fintiv does not believe that any terms of the '125 Patent require construction.  Nonetheless, to the extent the Court deems constructions necessary, Fintiv has proposed constructions that rely principally on the claim language and the specifications.  In contrast, Apple sets out proposed constructions that: (a) read the preferred embodiments out of the claims of the '125 Patent, (b) import limitations from the specification without providing evidence of a clear intent to limit the claims, and (c) make claim limitations superfluous.  This is never a proper approach to construing claims.  For these reasons and as set forth more fully below, this Court should reject Apple's proposed constructions and adopt those of Fintiv.  Each of the disputed terms should be afforded their plain and ordinary meaning.  To the extent the Court determines that any constructions are necessary, Fintiv's proposed constructions should be adopted.

## II.    <u>BACKGROUND</u>

### A.    The '125 Patent

The '125 Patent relates to management of virtual cards stored on mobile devices and discloses provisioning a contactless card in a mobile device with a mobile wallet application.  The specification of the '125 Patent identifies technical problems in the prior art and claims improvement to these problems.  For instance, the specification explains that prior art lacked "an effective means to manage various payment applets residing within the mobile device."  ('125 Patent at 1:63-67.)  Moreover, prior art implementations did not enable a user to "view any account specific information stored within the SE [Secure Element] or manage such applications with or without the use of POS [Point of Sale] equipment."  *Id.* at 2:19-29.  The specification further

explains that "[a]nother limitation of current mobile wallet applications is the lack of support providing for such technology . . . . Accordingly, users may often be bombarded with various applications that may be inapplicable to the user, making the process more difficult than necessary." *Id*. at 2:30-44.   Finally, the prior art did not allow for an easy way to update information: "As various service providers operate independently from one another, when an update is required by a particular service provider, each individual application is typically updated separately." *Id*. at 2:45-52.   In essence, the '125 Patent claims a technical solution to these problems through a mobile wallet application and mobile wallet management system to store contactless cards in a secure element.

Fintiv is asserting claims 11, 14, 16, 18, and 23 of the '125 Patent.

### B.      The Accused Apple Devices

Fintiv accuses Apple of directly infringing the '125 Patent through Defendant's Apple Wallet Application as implemented in Defendant's iPhone devices, including, at least iPhone 6, 6 Plus, 6s, 6s Plus, SE, 7, 7 Plus, 8, 8 Plus, X, XR, XS, and XS Max, and Apple Watch devices, including, at least, Series 1, 2, 3, and 4.   Fintiv further asserts that Apple has indirectly infringed and continues to indirectly infringe by contributing to and actively inducing infringement of one or more of the claims of the '125 Patent through Apple Wallet, which, upon information and belief, is used, implemented, and/or integrated by third-parties, such as users and developers.

### III.   LEGAL PRINCIPLES

Determining the proper meaning of patent claims is a question of law that exclusively belongs to the Court. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).   During claim construction, a court first looks at the words of the claims themselves to define the scope of the patented invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc).   In determining the meaning of the claims,

"there is a 'heavy presumption in favor of the ordinary meaning of claim language.'" *Watts v. XL Sys., L.P.*, No. 1:06-cv-653-LY, 2008 WL 5731945, at \*7 (W.D. Tex. July 1, 2008) (quoting *Johnson Worldwide Assocs. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999)); *see also Meetrix IP, LLC v. Citrix Sys., Inc.*, No. 1:16-CV-1033-LY, 2017 WL 5986191, at \*2 (W.D. Tex. Dec. 1, 2017) (citing *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012)) ("The Federal Circuit has reaffirmed that a departure from the ordinary and customary meaning is the exception, not the rule.").  Ordinary meaning is defined as the "meaning that term would have to a person of ordinary skill in the art in question at the time of invention." *Phillips*, 415 F.3d at 1313; *see also Pisony v. Commando Construction, Inc.*, W-17-CV-00055-ADA, 2019 WL 928406, at \*1 (W.D. Tex. Jan. 23, 2019).  "[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313.

Among the hierarchy of evidentiary sources relied upon for claim interpretation, the specification is the "single best guide" to the meaning of a disputed term other than claims themselves and is usually dispositive of the analysis. *Id.* at 1315.  "Although the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quotations omitted).  The file history is also relevant; however, "it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Phillips*, 415 F.3d at 1317.

"In most situations, an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term [and] it is improper to rely on extrinsic evidence." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996).  Extrinsic evidence is "less significant

than the intrinsic record in determining the 'legally operative meaning of claim language,'" *Phillips*, 415 F.3d at 1317, and "[h]eavy reliance on the dictionary divorced from the intrinsic evidence risks transforming the meaning of the claim term to the artisan into the meaning of the term in the abstract, out of its particular context, which is the specification." *Id*. at 1321.  Further, extrinsic evidence "may not be 'used to contradict claim meaning that is unambiguous in light of the intrinsic evidence.'" *ArcelorMittal France v. AK Steel Corp.*, 700 F.3d 1314, 1320 (Fed. Cir. 2012).

Courts must not "read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited."  *GE Lighting Sols., LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014); *Meetrix IP*, 2017 WL 5986191, at *9 (citing *Epos Techs. Ltd. v. Pegasus Techs. Ltd.*, 766 F.3d 1338, 1341 (Fed. Cir. 2014) ("it is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited.")  And, when multiple embodiments are taught, a construction that "excludes [a disclosed] embodiment is rarely, if ever, correct."  *SynQor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365, 1378-79 (Fed. Cir. 2013).

## IV.    **THE DISPUTED CLAIM TERMS**

There are 7 disputed terms.  Apple proposes several unwieldy constructions in an apparent, but misplaced, attempt to aid the jury.  But "[c]laim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement."  *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997); *see also Pisony*, 2019 WL 928406, at *5 (rejecting Defendants' construction where adopting the construction would not resolve any dispute

over claim scope).  This does not require "that the trial judge must repeat or restate every claim term in order to comply with the ruling that claim construction is for the court."  *U.S. Surgical Corp.* at 1567-68 (holding, *inter alia*, district court properly refused to adopt claim construction that amounted to an "undisputed restatement of what these words mean"); *see also Pisony*, 2019 WL 928406, at *5.  It is therefore appropriate for the Court to construe claim terms according to their plain meaning when it has resolved any actual disputes raised by the parties.  *See Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1207 (Fed. Cir. 2010) (holding that district court did not err in construing claim phrase according to its plain meaning because the court resolved the parties' dispute).

### A.    "wallet management applet (WMA)" (Claims 11 and 23)

| Fintiv's Construction | Apple's Construction |
| --- | --- |
| Plain and ordinary meaning.  To the extent the Court requires construction, the plain and ordinary meaning is "integrated functionality that enables management of a wallet related applet." | "software application for storing duplicate account specific information accessible to the mobile wallet application" |

The term "wallet management applet (WMA)" does not require construction because one of ordinary skill in the art would have reasonable certainty about the meaning and scope of the term from its context in the claims and specification.  *Pisony*, 2019 WL 928406, at *1 ("[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention ....") (citation omitted).  The term, for example, appears in claims 11 and 23 as follows: "a wallet management applet (WMA) corresponding to the contactless card applet."  Further, the term is used throughout the specification.  For example, Figure 2 is an exemplary embodiment of the invention that illustrates "a system and method for installing a mobile wallet application on the mobile device and

correlating wallet management applet in the SE of the mobile device":



('125 Patent at 5:47-54, Fig. 2.)  The specification further describes the "wallet management applet

(WMA)" as follows:

> Further, if a request to provision the selected contactless card applet 23 is made,
> such as a "VISA®" contactless card applet, a corresponding widget and WMA 21
> applet may be programmed to be provisioned automatically.  The corresponding
> widget may reside in the mobile wallet application 24, at the application level, to
> provide an interface to the user.  **The corresponding WMA 21 applet, which may
> include account specific information of the contactless card apple[t] (e.g. credit
> card number, expiration date, security code, PIN, etc.), may be provisioned
> into the SE.  *By installing both the WMA 21 applet and the widget, the user may
> view and manage the information stored in the WMA 21 applet through the
> corresponding widget.***

*Id*. at 8:60-9:5 (emphasis added).  Moreover, the specification explains that the account specific

information may be stored in the "wallet management applet (WMA)" and accessed by the mobile

device to check the expiration date of the contactless card applet 23 and request update when the

card applet expires.  *Id*. at 9:45-60.  The specification further explains that the "wallet management

applet (WMA)" may limit the amount of changes a user can make, such as limiting the number of times expiration dates or credit card numbers can be changed.  *Id*. at 9:61-10:8.  Accordingly, the term "wallet management applet (WMA)" is not ambiguous and would be readily comprehensible to one of ordinary skill in the art based on the teaching of the claims and specification.  *Pisony,* 2019 WL 928406, at *1.  Apple's proposal that the term "wallet management applet (WMA)" be construed to mean "software application for storing duplicate account specific information accessible to the mobile wallet application" improperly narrows the claim to a specific embodiment and improperly attempts to read specific examples into the claim language.  Yet, in the absence of lexicography or disclaimer, Apple's attempt to limit the claims to an embodiment in the specification should be rejected and the term should be given its plain and ordinary meaning.

First, the recitation that the "wallet management applet (WMA)" be a "software application" improperly attempts to read specific examples into the claim language.  *SunRace Roots Enter. v. SRAM Corp.*, 336 F.3d 1298, 1305 (Fed. Cir. 2003); *see also Int'l Biomedical, Ltd. v. Gen. Elec. Co.*, No. 1-14-CV-397-LY, 2015 WL 7431408, at *5 (W.D. Tex. Nov. 20, 2015) ("The word 'may' indicates that the patentee did not intend to limit the disclosed class of structures to only [one embodiment].  The patentee must demonstrate an intention to limit claim scope, and particular embodiments appearing in the written description will not be used to limit claim language that has broader effect.") (internal quotations omitted).  On the contrary, the specification teaches that the "wallet management applet" is integrated software functionality that may be implemented in a variety of ways, including at least applets or software applications.  For instance, the specification describes an example where the "WMA 21 **_may_** include ***both a WMA 21 container _and_ one or more WMA 21 applets***."  ('125 Patent at 7:8-9 (emphasis added).)  The specification further explains that the "WMA 21 container may manage the information stored in

the WMA 21 applets" and that the "WMA 21 container may be installed in the mobile device 100 when WMA 21 applet is requested to be installed, or when the mobile wallet application is installed, or separately without regard to either the WMA 21 applet or the mobile wallet application." *Id*. at 7:9-15. Also, "[t]he WMA 21 container is a software application that may reside within the SE of the mobile device 100 to manage account information related to the contactless card applet 23 (i.e. WMA 21 applet) that may be typically inaccessible by the user." *Id*. at 7:16-20. The specification further teaches that the "WMA 21 applet, [] may include account specific information of the contactless card apple[t] (e.g. credit card number, expiration date, security code, PIN, etc.)." *Id*. at 8:66-9:2. In addition, "[w]hile the described process illustrates a preferred embodiment of the present invention, the amount of modification allowed by the WMA 21 container is not limited to what has been described. In some instances, WMA 21 container may allow direct modification to the account specific information as dictated by business needs." *Id*. at 10:3-8. The specification provides exemplary implementations of the WMA that may include a "software application," but as shown previously, the WMA is not limited in implementation solely to a "software application." Apple's proposal to limit "wallet management applet (WMA)" to only a "software application" is contrary to the specification.

Second, Apple also improperly asks this Court to read limitations into the claim by requiring that the "wallet management applet (WMA)" store duplicate account specific information. On the contrary, the specification teaches that the "wallet management applet" *may* store duplicate account specific information:

> To provide the user of the mobile device with the account specific information related to contactless card applets, separate account information associated with the corresponding contactless card applet 23 (e.g. credit card number, expiration date, security code, PIN, etc.) may be provisioned into the SE as WMA 21 applets. The respective account information or **WMA 21 applet _may_ be provided by duplicating the account information associated with the contactless card** when

the TSM system receives contactless card applets from SPs to provision into the mobile device 100. ***Alternatively*, SP providing the contactless card applet may provide the account related information separately to the TSM system for provisioning**.

('125 Patent at 7:38-50) (emphasis added).  In other words, the specification does not require, as Apple's construction proposes, that the "wallet management applet" store duplicate account specific information when providing the user of the mobile device with the account specific information related to contactless card applets.  Instead, the specification offers the ability to store duplicate account specific information as optional functionality of the WMA applets.  As the specification disclosed more than one embodiment utilizing the "wallet management applet," there is no reason to import a limitation from the specification when the claim language is broader.  *See Superguide Corp. v. DirecTV Enter., Inc.*, 358 F.3d 870, 875 (Fed. Cir. 2004) ("a particular embodiment appearing in the written description may not be read into a claim when the claim language is broader than the embodiment."); *see also Pisony*, 2019 WL 928406, at *2 ("Although the specification may indicate that a certain embodiment is preferred, a particular embodiment appearing in the specification will not be read into the claim when the claim language is broader than the embodiment.") (citations omitted).

For all of these reasons, Apple's proposed construction should be rejected.  To the extent that the Court determines that "wallet management applet (WMA)" requires construction, Fintiv submits that the term should be construed to mean "integrated functionality that enables management of a wallet related applet," which is the plain and ordinary meaning of the term consistent with the claims and specification.  Unlike Apple's proposed construction, Fintiv's proposed construction does not improperly exclude other examples described in the specification by limiting the "wallet management applet" to a software application and requiring the storing of duplicate account specific information.  *See, e.g.*, '125 Patent at 5:47-54, 7:3-20; 7:38-50; 8:60-

9:5; 9:25-35, and 9:61-10:9.

**B.      "widget" (all asserted claims)**

| Fintiv's Construction | Apple's Construction |
|---|---|
| Plain and ordinary meaning.  To the extent the Court requires construction, the plain and ordinary meaning is "integrated functionality that relates to applications related to a financial institution, transportation account, and the like." | "user interface software application" |

The term "widget" does not require construction as a person of ordinary skill in the art would have reasonable certainty about the meaning and scope of the term from its context in the claims and specification.  *Pisony*, 2019 WL 928406, at *1.  The specification provides various examples of what can constitute a "widget."  For instance, the specification teaches that "applications stored at the application level related to a financial institution, transportation account, and the like" are examples of widgets that may be housed in the wallet application.  ('125 Patent at 4:57-61.)  The specification also provides an example for which the "widget" represents "a virtual card" that resides "within the respective mobile wallet application." *Id*. at 5:66-6:4.

Apple's proposal that the term "widget" be construed to mean "user interface software application" is another attempt by Apple to improperly narrow the claim to a specific embodiment and improperly attempts to read specific examples into the claim language.  For instance, the specification teaches that "[w]idgets *may* be an application configured to interface with a user of the mobile device" and further identifies "individual payment applications, transportation applications, and other related applications" as example of widgets. *Id*. at 5:6-9 (emphasis added). In other words, the '125 Patent does not require that the "widget" be a "user interface" as proposed by Apple.

Additionally, Apple's proposal would violate the doctrine of claim differentiation.  For

example, dependent claim 24, which depends on independent claim 23, requires that "the widget is configured to include a ***user interface***" and dependent claim 16, which depends on independent claim 11, requests that "the widget is an application configured to ***interface with a user*** of the mobile device."  (Emphasis added.)  *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004) ("[W]here the limitation that is sought to be 'read into' an independent claim already appears in a dependent claim, the doctrine of claim differentiation is at its strongest"); *see also Pisony*, 2019 WL 928406, at *3 ("The Court understands that it is well established that the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim.") (citations and quotations omitted). Claim differentiation requires that claims 16 and 24 be narrower in scope than the claims for which they depend.  Apple's proposed construction would violate this requirement and, as a consequence, render claims such as claims 16 and 24 superfluous.

To the extent the Court determines the term "widget" requires construction, Fintiv submits in the alternative that the construction "integrated functionality that relates to applications related to a financial institution, transportation account, and the like" is appropriate.  Although Fintiv maintains that no construction is necessary, unlike Apple's proposed construction, Fintiv's proposed construction is not narrowing and is consistent with the specification.  *See*, *e.g.*, '125 Patent at 4:57-61, 5:6-9, 5:66-6:4, 8:23-28, 8:60-9:5, and 10:9-14.

C.       **"mobile wallet application" (all asserted claims)**

| Fintiv's Construction | Apple's Construction |
|---|---|
| Plain and ordinary meaning.  To the extent the Court requires construction the plain and ordinary meaning is "application that provides wallet functionality on the mobile device." | "mobile wallet software application capable of being independently downloaded and installed" |

The term "mobile wallet application" does not require construction as a person of ordinary

skill in the art would have reasonable certainty about the scope and meaning of the term from its context in the claims and specification. *Pisony*, 2019 WL 928406, at *1. A portion of Apple's proposed construction supports this position given that it requires a "mobile wallet *software* application."

Nevertheless, Apple, in its proposed construction for "mobile wallet application" continues to improperly narrow the claim to a specific embodiment and improperly attempts to read specific examples into the claim language by requiring that the "mobile wallet application" be "independently downloaded and installed." On the contrary, the specification teaches that:

> After a customer account has been created or updated, if it is determined that the mobile wallet application 24 is not installed on the mobile device 100, the TSM system 120 will confirm the mobile wallet application installation request and initiate the wallet application installation process. The installation process may be initiated by transmitting a Wireless Application Protocol (WAP) message with an embedded Uniform Resource Locator (URL) to the Short Message Service (SMS) platform in step 203, which relays the message to the mobile device 100 in step 204. However, **the mobile wallet application 24 may be obtained in various other ways as well and *is not limited* to the WAP message method as described above. The mobile wallet application 24 *may* be downloaded directly to the requesting mobile device 100,** *sent to the user in a physical medium storing the application, <u>or by other suitable methods for providing software applications</u>*.

('125 Patent at 6:14-30 (emphasis added).) In other words, the '125 teaches that the mobile wallet application may be provided to the mobile device in a variety of methods, including, for example, being directly downloaded or pre-installed on the mobile device. Moreover, Apple's proposed construction also seeks to introduce ambiguity by the inclusion of "independently" in its proposed construction. Such an inclusion does not aid in clarifying the scope of the claims and is likely to cause unnecessary confusion as it adds ambiguity to the term "mobile wallet application." Imputing "capable of being independently downloaded and installed" to the term "mobile wallet application" improperly imports a narrowing scope and should be rejected by the Court.

To the extent the Court determines that "mobile wallet application" requires construction,

Fintiv submits in the alternative that the construction "application that provides wallet functionality on the mobile device" is appropriate. Although Fintiv maintains that no construction is necessary, unlike Apple's proposed construction, this language does not arbitrarily restrict the "mobile wallet application" to being independently downloaded and installed. *See*, *e.g.*, '125 Patent at 5:47-6:51, 7:55-57, 8:18-9:10, 9:40-54, and 11:5-64.

### D.    "SE information" (Claims 14 and 23)

| Fintiv's Construction | Apple's Construction |
|---|---|
| Plain and ordinary meaning. To the extent the Court requires construction the plain and ordinary meaning is "information related to the secure element that may include at least card production life cycle, card serial number, card image number, and integrated circuit card identification." | "information relating to the secure element" |

Apple again proposes a construction where none is needed as a person of ordinary skill in the art would understand the term "SE information" in the context of the claims and specification. *Pisony*, 2019 WL 928406, at *1. Apple's proposed construction confirms that claim construction is unnecessary as it uses almost the identical phrase it seeks to construe, "SE information," in its construction: "***information*** relating to the ***secure element***." Rearranging terminology of the claims with a construction simply for the sake of doing so is unnecessary. "The *Markman* decisions do not hold that the trial judge must repeat or restate every claim term in order to comply with the ruling that claim construction is for the court." *U.S. Surgical Corp.*, 103 F.3d at 1568. "Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement." *Id.*; *see also Pisony*, 2019 WL 928406, at *5 (rejecting Defendants' construction where adopting the construction would not resolve any dispute over claim scope). Construing "SE

information" would be "an obligatory exercise in redundancy" as there does not appear to be a dispute regarding scope.  *U.S. Surgical Corp.*, 103 F.3d at 1568.  Accordingly, no construction is needed here.

**E.    "mobile device information" (Claims 14, 18, and 23)**

| Fintiv's Construction | Apple's Construction |
|---|---|
| Plain and ordinary meaning.  To the extent the Court requires construction the plain and ordinary meaning is "mobile device related information." | "hardware or software properties relating to the mobile device" |

As with the other terms, the term "mobile device information" does not require construction because a person of ordinary skill in the art would have reasonable certainty about the scope and meaning of the term from its context in the claims and specification.  Moreover, the terms "mobile device" and "information" are ordinary terms that any jury would understand and are used here according to that ordinary meaning.  Accordingly, the term should be given its plain and ordinary meaning.

Apple's proposal that the term "mobile device information" be construed to mean "hardware or software properties relating to the mobile device" improperly narrows the claim to a specific embodiment and improperly attempts to read specific examples into the claim language. Yet, in the absence of lexicography or disclaimer, Apple's attempt to limit the claims to an embodiment in the specification should be rejected and the term should be afforded its plain and ordinary meaning.  On the contrary, the specification makes clear that the list of "mobile device information" is not exhaustive but are, instead, examples.  In particular, in the description of Figure 2, which the '125 patent identifies as "an exemplary embodiment of the present invention," several examples of "mobile device information" that can be captured by the OTA proxy are provided: "International Mobile Equipment Identity (IMEI)/Mobile Equipment Identifier (MEID), [and]

Mobile Subscriber Integrated Services Digital Network Number (MSISDN)." ('125 Patent at 5:49-54; 6:53-56.) Accordingly, Apple's proposed construction, which is clearly narrower than independent claims 18 and 23, "mobile device information comprising SE information," must be rejected. *See Superguide*, 358 F.3d at 875 ("a particular embodiment appearing in the written description may not be read into a claim when the claim language is broader than the embodiment."); *see also Phillips*, 415 F.3d at 1323 ("we have expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment"); *see also Pisony*, 2019 WL 928406, at *2 ("Although the specification may indicate that a certain embodiment is preferred, a particular embodiment appearing in the specification will not be read into the claim when the claim language is broader than the embodiment.") (citations omitted).

To the extent the Court determines the term "mobile device information" requires construction, Fintiv submits in the alternative that the construction "mobile device related information" is appropriate. Although Fintiv maintains that no construction is necessary, unlike Apple's proposed construction, this language is not as narrowing and is consistent with the specification. *See*, *e.g.*, '125 Patent at 5:45-54, 6:53-56, and 6:63-67.

**F.    "over-the-air (OTA) proxy" (Claim 23) and "OTA proxy" (claim 16)**

| Fintiv's Construction | Apple's Construction |
|---|---|
| Plain and ordinary meaning. To the extent the Court requires construction the plain and ordinary meaning is "functionality for creating a secure connection." | "mobile device software application for communication between a secure element and a server over a mobile network" |

As with the other terms, the terms "over-the-air (OTA) proxy" and "OTA proxy" do not require construction because a person of ordinary skill in the art would have reasonable certainty about the scope and meaning of these terms from their context in the claims and specification.

*Pisony,* 2019 WL 928406, at *1.  Accordingly, the term should be given its plain and ordinary meaning.

Apple's proposed construction seeks to limit the meaning of the terms "over-the-air (OTA) proxy" and "OTA proxy."  First, Apple's recitation that the term "over-the-air (OTA) proxy" and "OTA proxy" be a "mobile device software application" is an attempt to narrow the terms and is not supported by the specification.  For instance, the specification teaches that the "OTA proxy may be a separate component from the mobile wallet application 24, or may be included in the mobile wallet application 24."  ('125 Patent at 6:60-62.)  In other words, the OTA proxy is a form of software functionality and is not limited solely to a "mobile device software application" as proposed by Apple.

Second, Apple's inclusion of "communication between a secure element and a server over a mobile network" is also limiting.  For instance, claim 23 states that the OTA proxy be configured to:  (1) "provision the contactless card applet, a widget corresponding to the contactless card applet, and the WMA;" (2) "capture mobile device information comprising SE information;" and (3) "transmit the mobile device information for registering the mobile wallet application."  Further, the specification, for instance, teaches that the OTA proxy may:  (1) "send[] the captured SE and mobile device information to the TSM system 120;" and (2) "receive[] [Application Protocol Data Unit] APDU commands from the TSM system 120 to install requested issuer contactless applets 23 and correlating WMA 21 applet to be provisioned."  *Id.* at 6:63-64; 9:25-28.  This disclosure does not require that the OTA Proxy be limited solely to communication between "a secure element and a server over a mobile network."

Finally, Apple's inclusion of "a server" is vague and ambiguous.  Such an inclusion does not aid in clarifying the scope of the claims and is likely to cause unnecessary confusion as it adds

ambiguity to the terms "over-the-air (OTA) proxy" and "OTA proxy."  For instance, Apple's proposed construction leaves open a dispute as to whether the communication must be with a single server.  In addition, the specification does not support such a narrowing limitation.  Imputing "a server" to the terms "over-the-air (OTA) proxy" and "OTA proxy" improperly imports a narrowing scope and should be rejected by the Court.

To the extent the Court determines the terms "over-the-air (OTA) proxy" and "OTA proxy" require construction, Fintiv submits in the alternative that the construction "functionality for creating a secure connection" is appropriate.  Although Fintiv maintains that no construction is necessary, unlike Apple's proposed construction, Fintiv's alternative construction is not narrowing and is consistent the specification.  *See, e.g.*, '125 Patent at 6:34-7:8, 7:51-8:17, and 9:6-38.

G.      **"provision[ing]" (Claims 11 and 23)**

| MV3's Construction | Roku's Construction |
| --- | --- |
| No construction necessary.  Alternatively, the following is provided in the event the Court determines a construction is necessary: "making available for use" | "provid[e/ing] and/or mak[e/ing] available for use" |

Apple again proposes a construction where none is needed as a person of ordinary skill in the art would understand the term "provision[ing]" in the context of the claims and specification. *Pisony*, 2019 WL 928406, at *1.  Changing "provision[ing]" to "provid[e/ing] and/or mak[e/ing] available for use" simply for the sake of doing so is unnecessary.  "Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement."  *U.S. Surgical Corp.*, 103 F.3d at 1568; *see also Pisony*, 2019 WL 928406, at *5 (rejecting Defendants' construction where adopting the construction would not resolve any dispute over claim scope). Construing "provision[ing]" would be "an obligatory exercise in redundancy" as there does not

-17-

appear to be a dispute regarding scope.  *U.S. Surgical Corp.*, 103 F.3d at 1568.  In fact, the term

"provisioning" is used in the context of wallet applications, and even Apple itself uses the word

"provisioning" with regard to cards in a mobile wallet, stating:  "Within apps, PassKit provides

the APIs that your app will use to determine if it is running on an Apple Pay capable device and if

the device has been ***provisioned*** with payment cards that you support."  See Declaration of Rodney

R. Miller, ("Miller Declaration"), Ex. A, "Planning for Apple Pay," available at

https://developer.apple.com/apple-pay/planning/   (last   visited   on   9/12/2019).      It   seems

disingenuous  in  this  context  to  suggest  that  a  construction  is  required.    Accordingly,  no

construction is needed here.

## V.     <u>CONCLUSION</u>

To the extent the Court determines that the terms require construction, Fintiv requests that

the Court adopt its proposed constructions because its proposed constructions more closely adhere

to the language set out in the '125 Patent and represent how these terms would be understood by

a person of skill in the art.

Dated:  September 12, 2019                              Respectfully submitted,

_____

J. Mark Mann (Texas Bar No. 12926150)
mark@themannfirm.com
G. Blake Thompson (Texas Bar No. 24042033)
blake@themannfirm.com
**MANN | TINDEL | THOMPSON**
300 W. Main Street
Henderson, Texas 75652
913 Franklin Ave., Suite 201
Waco, Texas 76701
Telephone:  (903) 657-8540
Facsimile: (903) 657-6003

Andy Tindel (Texas Bar No. 20054500)
atindel@andytindel.com
**MANN | TINDEL | THOMPSON**
112 E. Line Street, Suite 304
Tyler, Texas 75702
Telephone: (903) 596-0900
Facsimile: (903) 596-0909

Craig D. Cherry (Texas Bar No. 24012419)
ccherry@haleyolson.com
**HALEY & OLSON, P.C.**
100 N. Ritchie Road, Suite 200
Waco, Texas 76701
Telephone: (254) 776-3336
Facsimile: (254) 776-6823

Jonathan K. Waldrop (CA Bar No. 297903)
(Admitted in this District)
jwaldrop@kasowitz.com
Darcy L. Jones (CA Bar No. 309474)
(Admitted in this District)
djones@kasowitz.com
Marcus A. Barber (CA Bar No. 307361)
(Admitted in this District)
mbarber@kasowitz.com
John W. Downing (CA Bar No. 252850)
(Admitted in this District)
jdowning@kasowitz.com
Heather S. Kim (CA Bar No. 277686)
(Admitted in this District)
hkim@kasowitz.com
Jack Shaw (CA Bar No. 309382)
(Admitted in this District)
jshaw@kasowitz.com

**KASOWITZ BENSON TORRES LLP**
333 Twin Dolphin Drive, Suite 200
Redwood Shores, California 94065
Telephone: (650) 453-5170
Facsimile: (650) 453-5171

Daniel C. Miller (NY Bar No. 4232773)
(Admitted in this District)
**KASOWITZ BENSON TORRES LLP**
1399 New York Avenue NW, Suite 201
Washington, DC  20005
Telephone:  (202) 760-3400
Facsimile:   (202) 760-3401
Email: dcmiller@kasowitz.com

Rodney R. Miller (Texas Bar No. 24070280)
(Admitted in this District)
**KASOWITZ BENSON TORRES LLP**
1349 West Peachtree Street N.W., Suite 1500
Atlanta, Georgia 30309
Telephone: (404) 260-6080
Facsimile: (404) 260-6081
Email: rmiller@kasowitz.com

**Attorneys for Plaintiff**
**FINTIV, INC.**

<u>**CERTIFICATE OF SERVICE**</u>

A true and correct copy of the foregoing instrument was served or delivered electronically via U.S. District Court [LIVE] — Document Filing System, to all counsel of record, on this 12th day of September, 2019.


_____

Andy Tindel