

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| FINTIV, INC.,<br>　　　　Plaintiff, | §<br>§<br>§ | |
| v. | §<br>§ | CIVIL ACTION 6:18-cv-00372-ADA |
| APPLE INC.,<br>　　　　Defendant. | §<br>§<br>§<br>§ | JURY TRIAL DEMANDED |

## ORDER DENYING DEFENDANT APPLE'S
## MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)

Came on for consideration this date the Motion of Defendant Apple to transfer under 28 U.S.C. § 1404(a), filed on June 13, 2019. ECF No. 40. Plaintiff Fintiv responded on July 3, 2019 (ECF No. 45) and Apple replied on July 23, 2019 (ECF No. 53). The Court held a hearing on this motion on August 29, 2019. On September 7, 2019, Apple filed a post hearing brief which the Court has also taken into consideration. ECF No. 69.

After careful consideration of the above briefing and the arguments made at the hearing, the Court **DENIES** Apple's motion to transfer the case to the Northern District of California, but **GRANTS** Apple's alternative motion to transfer the case to the Austin Division of the Western District of Texas, for the reasons described below.

### I.　　Factual Background and Procedural History

Fintiv filed this lawsuit on December 21, 2018 alleging infringement of U.S. Patent No. 8,843,125. ECF No. 1. The title of the '125 Patent is "System and Method for Managing Mobile Wallet and its Related Credentials." According to Fintiv, the '125 Patent "relates to management of virtual cards stored on mobile devices and discloses provisioning a contactless card in a mobile

device with a mobile wallet application." ECF No. 28 at ¶ 11. Fintiv alleges that the Apple Wallet

Application on the iPhone and Apple Watch infringe the '125 Patent. *Id.* at ¶¶ 16-31.

Apple filed a motion to transfer venue under 28 U.S.C. § 1404(a) requesting that the case

be transferred to the Northern District of California ("NDCA") or, in the alternative, to the Austin

Division of the Western District of Texas ("WDTX"). ECF No. 40 at 1.

## II.     Standard of Review

Title 28 U.S.C. § 1404(a) provides that, for the convenience of parties and witnesses, a

district court may transfer any civil action to any other district or division where it might have

been brought or to any district or division to which all parties have consented. "Section 1404(a)

is intended to place discretion in the district court to adjudicate motions for transfer according to

an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc.*

*v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622

(1964)). The party moving for transfer carries the burden of showing good cause. *In re*

*Volkswagen of Am., Inc.*, 545 F.3d 304, 314 (5th Cir. 2008) (hereinafter "*Volkswagen II*")

("When viewed in the context of § 1404(a), to show good cause means that a moving party, in

order to support its claim for a transfer, must . . . clearly demonstrate that a transfer is '[f]or the

convenience of parties and witnesses, in the interest of justice.'") (quoting 28 U.S.C. § 1404(a)).

"The preliminary question under § 1404(a) is whether a civil action 'might have been

brought' in the destination venue." *Volkswagen II*, 545 F.3d at 312. If so, in the Fifth Circuit, the

"[t]he determination of 'convenience' turns on a number of public and private interest factors,

none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar.*

*Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of

access to sources of proof; (2) the availability of compulsory process to secure the attendance of

witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (hereinafter "*Volkswagen I*") (citing to *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* Courts evaluate these factors based on "the situation which existed when suit was instituted." *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

A court may "consider undisputed facts outside the pleadings, but it must draw all reasonable inferences and resolve all factual conflicts in favor of the non-moving party." *Weatherford Tech. Holdings, LLC v. Tesco Corp.*, No. 2:17-CV-00456-JRG, 2018 WL 4620636, at *2 (E.D. Tex. May 22, 2018). It is this issue that Apple's post-hearing brief primarily addressed, and the Court has taken its additional arguments into consideration in determining whether to grant the Motion to Transfer.

A plaintiff's choice of venue is not an independent factor in the venue transfer analysis, and courts must not give inordinate weight to a plaintiff's choice of venue. *Volkswagen II*, 545 F.3d at 314 n.10, 313 ("[W]hile a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege."). However, "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id.* at 315; *see also QR Spex, Inc. v. Motorola, Inc.*, 507 F.Supp.2d 650, 664 (E.D. Tex. 2007) (characterizing movant's burden under § 1404(a) as "heavy").

### III.    Discussion regarding transfer to the Northern District of California

As a preliminary matter, neither party contests the fact that venue is proper in NDCA and could have been filed there.

#### a.  Relative ease of access to sources of proof

In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored. *Volkswagen II*, 545 F.3d at 316.

Apple argues that this factor weighs in favor of transfer because the "overwhelming majority of sources of proof" regarding the accused technology are in NDCA. ECF No. 40 at 7. More specifically, Apple asserts that "all of the documents relating to the design and development of the accused technology" were generated and are stored in NDCA. *Id.* at 6-7. Apple also asserts that personnel with "knowledge" of the design and development of the Apple Wallet iOS source code and watchOS (the operating system for the accused Apple Watches) are in NDCA. *Id.* at 3. Apple further asserts that the team responsible for "developing, updating, and maintaining the server-side source code for Apple Wallet" are generally in NDCA. *Id.* Finally, Apple asserts that the documents and personnel related to marketing the accused technology and licensing are in NDCA. *Id.* at 7; *see also id.* at 3. All told, Apple specifically identifies six potential party witnesses with relevant information. *Id.* at 2-3.

In its response, Fintiv makes two counter-arguments regarding Apple's source of proof. First, Fintiv argues that Apple fails to identify with specificity any hard copies of documents that are in NDCA and that Apple does not argue that it would be difficult to transport those documents to WDTX. ECF No. 45 at 2. More generally, Fintiv asserts that the physical location of Apple's documents "is of little consequence because in the modern age, remote access to documents stored on servers is commonplace and can be made available at the click of a mouse." *Id.* at 2. Second,

Fintiv asserts that, despite Apple's statements to the contrary, that there are "over 40 employees in Austin with direct experience and relevant knowledge regarding Apple Pay and Wallet." *Id.* at 3. Fintiv also points to "numerous" job openings for software development engineers, application engineers, iOS Wallet and Apple Pay engineers, global business operations managers, senior program managers, and business development managers in Austin related to Apple Pay and Wallet. *Id.*

Regarding its own sources of proof, Fintiv asserts that all documents concerning the '125 Patent and Fintiv's business operations are in and accessible from its Austin office. *Id.* at 4. Fintiv claims that the employees who have the most knowledge about its licensing practices are (1) President Mike Love, who works out of the Fintiv's Austin office, (2) Sales Executive Charlie Wiggs, who works remotely from St. Louis, Missouri, and (3) Sales Consultant David Luther, who works remotely from Atlanta, Georgia. *Id.* Fintiv's head of human resources, David Gibson, also works in the Austin office. *Id.* at 7.

In its reply, Apple makes several counter-arguments. First, Apple argues that not all of Fintiv's documents are in WDTX. In particular, Apple asserts that "Fintiv has represented that the source code it intends to make available is in NDCA." ECF No. 53 at 2. Apple also asserts that it is unclear what relevant documents Fintiv possesses to begin with. *Id.* Second, Apple asserts that "Fintiv's party convenience argument boils down to [President Mike Love]." *Id.* at 3. Third, Apple entreats the Court to reject Fintiv's argument that the actual physical location of a document is of little consequence in the electronic age because it is still contrary to Fifth Circuit precedent. *Id.* Fourth, Apple asserts that the size of its Austin campus and the number of its local employees is irrelevant because its Austin office lacks a connection to claims at issue. *Id.* at 3-4. Fifth, Apple argues that Fintiv is incorrect when it asserts there may be potential witnesses in Austin. *Id.* at 4.

In fact, Apple recites that it will not call any Austin Apple employees to trial or by deposition. *Id.* Finally, Apple argues that Fintiv's argument that "Apple was required to do more than identify its six potential party witnesses and explain why they have relevant information" is contrary to Fifth and Federal Circuit precedent. *Id.* at 4-5.

The Court finds that the "relative ease of access to sources of proof" slightly weighs towards transfer for the reasons that follow. First, although Fintiv asserts that its documents are in or accessible from WDTX,[1] because Apple is the accused infringer, it is likely that it will have the bulk of the documents that are relevant in this case. *See, e.g., In re Genentech, Inc.,* 566 F.3d 1338, 1345 (Fed. Cir. 2009) ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."). Therefore, the Court finds that the location of the documents relevant in this case weighs towards transfer.

---

[1] Apple's argument that Fintiv is wrong in asserting that "[a]ll of Fintiv's documents concerning the '125 Patent and its business operations are located in or accessible from its principal place of business in this District" is incorrect and undercuts its own argument. ECF No. 53 at 2. Because source code is, by its very nature, electronic, it can be easily transported electronically to distant locations essentially instantaneously. The Court finds it likely that Fintiv offered to make its source code available for inspection in NDCA for the convenience of counsel or Apple's experts, and not that the source code is actually resident only on a server in NDCA. In fact, Ms. Frost's declaration merely states that "Fintiv proposed that its source code be produced in its counsel's office in Silicon Valley and Apple proposed that its source code be produced in its counsel's Silicon Valley office." ECF No. 53, Exh. C at ¶ 2. That declaration does not, however, state that Fintiv's source code is actually in NDCA as Apple's brief implies. ECF No. 53 at 2 ("First, Fintiv incorrectly asserts that '[a]ll of Fintiv's documents concerning the '125 Patent and its business operations are located in or accessible from its principal place of business in this District.' Fintiv has represented that the source code it intends to make available for inspection is in NDCA.") (internal quotations removed). As such, while Fintiv's source code may be located in or accessible from WDTX, it can be easily transported to NDCA for inspection. Therefore, the Court does not find any inconsistency between Fintiv's assertion that "[a]ll of Fintiv's documents concerning the '125 Patent and its business operations are located in or accessible from [WDTX]" and Fintiv's offer to make its source code available for inspection in NDCA. Furthermore, the Court also finds it unfair that Apple should use Fintiv's attempt to make source code more accessible for both parties by allowing the inspection to occur in NDCA against Fintiv in a 1404(a) motion. Finally, Apple's argument that the inspection of Fintiv's source code is proof that some of Fintiv's documents are in NDCA actually undercuts its own argument. More specifically, if the fact that Fintiv can make its source code available for inspection in NDCA helps weigh towards transfer, similarly, because Apple's documents can likewise be produced in WDTX, that would weigh against transfer. In any event, because the Court finds that all of Fintiv's documents are in WDTX and because Apple, and not Fintiv, possesses the bulk of the documents, Apple's argument regarding the availability of Fintiv's source code in NDCA does not factor into the Court's analysis.

Second, the Court finds that, for party witnesses, NDCA and WDTX are equally convenient. More specifically, while Apple has identified several employees in NDCA with relevant information and states that it will not call any Austin Apple employees at trial or by deposition, Fintiv identifies two employees located in WDTX and two employees for which WDTX is more convenient than NDCA. Fintiv also identifies at least one Austin Apple employee who may have relevant information.[2] Furthermore, in the hearing, Fintiv asserts that some of the Austin-based AppleCare employees may have knowledge of ApplePay and Apple Wallet that could support Fintiv's indirect infringement claims. Hrg. Tr. 45:13-17. Because both parties have identified a few potential witnesses in both NDCA and WDTX (with varying levels of specificity), the Court finds that party witnesses are neutral in terms of transfer.

In reaching this conclusion, the Court has rejected any suggestion that the appropriate method would be to simply count the number of identified (by name or by function) witnesses and compare the total numbers in NDCA and WDTX. Were courts to make transfer decisions by mechanically counting potential witnesses proffered by both sides, it could become an invitation for parties in future cases to simply "game" the system by reciting long lists of potential witnesses—who ultimately may not have any relevant information—in order to support or counter a transfer motion. Additionally, such a mechanical approach ignores the information asymmetry between the parties at this stage of the case, which unfairly handicaps the patentee/non-movant as it can only find potential witnesses using public information whereas the alleged infringer/movant has both public and confidential information. The Court does not mean to suggest in any way that in this case that Apple has not acted in good faith, to the contrary it expressly finds that Apple's

---

[2] The Court notes that although Apple provided a sworn declaration from Michael Jaynes regarding Routao Wang's college and Apple experience, it did not provide one from Mr. Wang, despite the fact he is an Apple employee. But because the Court resolved factual conflicts in favor of Fintiv, this omission did not factor into the Court's analysis.

arguments and evidence were made and presented in a good faith effort to present as fulsome an analysis as possible of where relevant witnesses were located. Nonetheless, this Court believes that this particular factor in the analysis for motions to transfer is in transition, and that merely attempting to balance how many employees or witnesses reside in one location or another is by itself insufficient. Instead, this Court looks at the totality of the circumstances, including but not limited to, the witness's title and relevant experience, the likelihood that a witness may have relevant information, the number of witnesses, the location of those witnesses, whether the testimony of those witnesses goes to an element of a claim, the amount of public information available to the parties, *etc.*

Because the location of documents weighs in favor of transfer and the location of party witnesses is neutral towards transfer, the Court finds that the relative ease of access to sources of proof only slightly weighs in favor of transfer.

Finally, although the Court wishes to make clear that it has followed Fifth Circuit precedent regarding this factor, the Court believes that this factor is at odds with the realities of modern patent litigation. In particular, based on this Court's experience, in modern patent litigation, all (or nearly all) produced documents exist as electronic documents on a party's server. Then, with a click of a mouse or a few keystrokes, the party produces these documents. In modern patent litigation, documents are located on a server, which may or may not be in the transferee district (or given the use of cloud-based storage, may be located on multiple servers in multiple districts, or even multiple countries) and are equally accessible from both the transferee and transferor districts. Therefore, in this Court's view, there is no difference in the relative ease of access to sources of proof from the transferor district as compared to the transferee district when the vast bulk of documents are electronic. District courts—particularly those with patent-heavy dockets which

have very significant document productions—have recently begun to acknowledge this reality. *Uniloc USA Inc. v. Samsung Elecs. Am.*, No. 2:16-cv-00642-JRG, ECF No. 216 at 8-9 (E.D. Tex. Apr. 19, 2017) ("Despite the absence of newer cases acknowledging that in today's digital world computer stored documents are readily moveable to almost anywhere at the click of a mouse, the Court finds it odd to ignore this reality in favor of a fictional analysis that has more to do with early Xerox machines than modern server forms."). But, under current Fifth Circuit precedent, the physical location of electronic document does affect the outcome of this factor. *See, e.g., Volkswagen II*, 545 F.3d at 316. Even though it would not have changed the outcome of this motion, this Court expresses its hope that the Fifth Circuit will consider addressing and amending its precedent in order to explicitly give district courts the discretion to fully take into consideration the ease of accessing electronic documents.

### b. Availability of compulsory process to secure the attendance of witnesses

In this factor, the Court considers the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order. *Id.*

In its opening brief, Apple argues that because there are "at least eight inventors on three strong prior art references" in NDCA, this factor weighs in favor of transfer. ECF No. 40 at 7.

In its response, Fintiv argues that this factor "strongly" weighs against transfer because there are "at least 10 specific third-party witnesses" in WDTX. ECF No. 45 at 4. In particular, Fintiv identifies seven witnesses who are employed by NXP and STMicro, which Fintiv alleges provide near-field communication ("NFC") components for the accused products. *Id.* at 5-6. Fintiv also asserts that there may be other potential witnesses in WDTX given that NXP has 5,000 employees in Austin. *Id.* at 5. Fintiv also argues that WDTX is more convenient for other potential

9

STMicro witnesses given that STMicro's U.S. headquarters is just 115 miles from Waco. *Id.* at 6. Fintiv also asserts that there are several banks that issue credit cards (1) in WDTX, (2) are within the 100-mile radius of the Court's subpoena power, or (3) where WDTX is more convenient that NDCA. *Id.*

Finally, Fintiv accuses Apple of "cherry-picking" prior art witnesses, that Apple does not state it intends to rely on them, and that prior art witnesses should be given little, if any weight. *Id.* at 6-7.

In its reply, Apple asserts that not only are there no knowledgeable NXP witnesses located in WDTX, but there are some NXP employees with relevant knowledge that are located in NDCA. ECF No. 53 at 1. ██████████████████████████████████

██████████████████████████████████████████

████████████████████████ Finally, Apple argues that the WDTX banks Fintiv identified are just a few out of the 3000+ banks across the country, including some in NDCA. *Id.* at 2. Apple further argues that card payment networks, *e.g.*, Visa, and not the banks are "responsible for the technical implementation and integration of Apple Pay/Apple Wallet" are therefore are more likely to have employees with relevant information. *Id.* at 2. Apple then follows by asserting that none of those payment networks are in WDTX while one is headquartered in NDCA.[3] *Id.*

After considering the parties arguments, the Court finds that this factor is neutral for the reasons that follow. First, because prior art witnesses are very unlikely to testify (and that Apple may have cherry picked them to begin with), the Court gives their location "minimal" weight. *East*

---

[3] Although it does not factor into the Court's analysis, the Court takes judicial notice of the fact that Visa does have at least one office in WDTX at 12301 Research Blvd, Austin, TX 78759, which is just down the street for Apple's Austin campus.

*Tex. Boot Co., LLC v. Nike, Inc.*, No. 2:16-cv-0290-JRG-RSP, 2017 WL 28559065 at *4 (E.D. Tex. Feb. 15, 2017).  Accordingly, prior art witnesses do not weigh for or against transfer.

Second, the parties have identified several potential third-party witnesses that may have relevant information in both NDCA and WDTX.  For NXP witnesses, although the parties disagree whether there are any NXP witnesses in WDTX that may have relevant information,[4] because the Court resolves factual conflicts in favor of the non-movant, the Court concludes there may be some NXP employees in WDTX with relevant information.  Accordingly, because there may be NXP witnesses with relevant information in both NDCA and WDTX, the Court finds that NXP witnesses do not weigh for or against transfer.

An unusual situation exists regarding STMicro witnesses.  Fintiv identifies several STMicro employees in WDTX that may have relevant knowledge.  ECF No. 45 at 6. ███

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████  But, even if the Court were to consider STMicro

---

[4]In particular, Counsel's representations as an officer of the court that he believes that the identified NXP witnesses in WDTX have relevant information are notable.  Hrg. Tr. 37:13–19 (Court: "[Y]ou are representing to the Court as an officer of the Court as the plaintiff in this case that you believe that the NXP folks that you've identified on [Slide] 13 either are or could be relevant witnesses in the prosecution of this litigation by Fintiv?"  Mr. Waldrop: "Yes, Your Honor. Absolutely. At least these and probably more.").

witnesses, it would not change the outcome of this motion as it would merely tip this factor from neutral to slightly weighs against.

Finally, the parties initially disagree on whether banks or credit card issuers are more relevant. *Compare* ECF No. 45 at 6 (Fintiv) *with* ECF No. 53 at 2 (Apple). The Court takes no position on this as it is unclear to the Court if either will have relevant information in this case and which may have more relevant information. The parties then disagree on whether there are more banks with relevant information in NDCA or WDTX. *Compare* ECF No. 45 at 6 (Fintiv) *with* ECF No. 53 at 2 (Apple). Because it is unclear whether banks will have relevant information in this case and because both sides list banks in NDCA and WDTX, the Court finds that the presence of banks in WDTX and NDCA does not weigh for or against transfer.

Because prior art witnesses, NXP witnesses, or banks do not weigh for or against transfer, the Court finds that availability of compulsory process to secure the attendance of witnesses is neutral.

### c.   Cost of attendance for willing witnesses

The convenience of witnesses is the single most important factor in the transfer analysis. *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009). The Court should consider all potential material and relevant witnesses. *See Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-cv-693, 2017 WL 4155236, at *5 (E.D. Tex. Sept. 19, 2017). "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be travelled." *Id.* at 1343. The convenience of party witnesses is given little weight. *See ADS Sec. L.P. v. Advanced Detection Sec. Servs., Inc.*, No. A-09-CA-773-LY, 2010 WL 1170976, at

*4 (W.D. Tex. Mar. 23, 2010), report and recommendation adopted in A-09-CA-773-LY (ECF No. 20) (Apr. 14, 2010).

As a preliminary matter, given typical time limits at trial, the Court does not assume that all of the party and third-party witnesses listed in 1404(a) briefing will testify at trial. Rather, in addition to the party's experts, the Court assumes that no more than a few party witnesses—and even fewer third-party witnesses, if any—will testify live at trial. Therefore, long lists of potential party and third-party witnesses do not affect the Court's analysis for this factor.

The Court finds that this factor is neutral because of the following: First, the cost of attendance of party witnesses does not weigh for or against transfer because there appear to be several potential witnesses in both NDCA and WDTX. In any case, courts give the convenience of party witnesses little weight. Second, because prior art witnesses are very unlikely to testify, the Court finds that the cost of attendance of prior art witnesses does not weigh for or against transfer. Third, the cost of attendance of NXP witnesses is also neutral because the parties identified potential NXP witnesses in both districts. Likewise, the cost of attendance of bank employees is also neutral. For the reasons described above, the Court did not consider the cost of attendance of STMicro witnesses.

Because party witnesses, prior art witnesses, NXP witnesses, or banks do not weigh for or against transfer, the Court finds that the cost of attendance of willing witnesses factor is neutral.

### d. All other practical problems that make trial of a case easy, expeditious and inexpensive

Both parties agree that this factor is neutral. ECF No. 40 at 9 (Apple), ECF No. 45 at 9 (Fintiv). The Court also agrees.

### e. Administrative difficulties flowing from court congestion

The relevant inquiry under this factor is actually "[t]he speed with which a case can come to trial and be resolved[.]" *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009).

In its motion, Apple argues that based on data from Lex Machina over a 11-year period from January 2008 to December 2018, NDCA has a shorter median time to trial (approximately 28 months) for patent cases than WDTX (approximately 32 months). ECF No. 40 at 9. But Apple concedes that the less congested Waco Division docket will likely change those statistics. *Id.*

In its response, Fintiv cites United States District Court statistics over a 12-month period ending March 31, 2019, which show that the median time to trial in civil cases is 25.7 months in WDTX versus 28.4 months in NDCA. ECF No. 45 at 10.

Because the statistics proffered by the parties are from different sources and over different time frames, comparing the two is a bit of an apples-to-oranges comparison. Furthermore, the median time-to-trial for patent cases in WDTX is based on a relatively small sample size (eight cases), which, along with comparing the time-to-trial for patent cases (Apple) versus all civil cases (Fintiv) may partially explain the difference between the parties' WDTX statistics. But because most of the patent cases in the last few years were likely in the Austin Division and because that particular division has one of the highest caseloads per judge in the country (if not the highest), the overall WDTX time-to-trial may not be representative of the time-to-trial in the Waco Division, which has a patent-specific Order Governing Proceedings ("OGP").

In the Court's OGP, trial is scheduled to begin 44–47 weeks after the Markman hearing. In this case, because the Markman hearing is scheduled for November 7, 2019, trial is scheduled to start between September 10, 2020 and October 1, 2020. Even assuming that trial commences on the latter date, in this case, the time from filing (December 21, 2018) to trial will be 21.4 months.

As such, because that is approximately 25% faster than both of the time-to-trial statistics in NDCA proffered by either party, the Court finds that this factor weighs against transfer.

### f. Local interest in having localized interests decided at home

In its motion, Apple argues that NDCA has a stronger local interest in this litigation than does WDTX because the employees Apple identified as being "responsible for research, design, development, implementation, and product marking of Apple Wallet" are in NDCA. ECF No. 40 at 10. Apple also argues that Fintiv's connection to "WDTX" is tenuous. *Id.*

In its response, Fintiv argues that WDTX has a "significant localized interest" in this case because (1) Fintiv's principal place of business—and only U.S. office—is in Austin, (2) Apple's second largest campus, with 6,200 employees, is in Austin, and (3) Apple may receive up to $33 million of Texas taxpayers money to build a second campus in Austin. ECF No. 45 at 10.

The Court find that this factor weighs against transfer for the reasons that follow. First, Apple is likely one of the largest employers in both NDCA and WDTX, so both districts have a significant interest in this case. Furthermore, although the parties dispute whether there are any Apple employees with relevant knowledge located in WDTX, Fintiv has identified at least one Apple employee in WDTX who may have relevant information. As such, WDTX has a localized interest with respect to Apple. For all of these reasons, Apple's contribution to this factor is neutral.

Second, despite Apple's argument that Fintiv's connection to WDTX is "tenuous," because Fintiv has its only U.S. office in WDTX, it has multiple employees here, including its President, the Court finds that Fintiv's presence in WDTX weighs against transfer. Because Fintiv has its principal place of business in Austin, this case is different than many of the cases Apple cites in support of its motion where the plaintiff was a foreign corporation with no connection to this

district or were located in another district. *See, e.g., DataQuill Ltd. V. Apple Inc.*, No. A-13-CA-706-SS, 2014 WL 2722201 (W.D. Tex. June 13, 2014).

Finally, although neither party raises this issue, the significant presence of NXP in this district may also contribute towards a higher localized interest in this case. More specifically, NXP has over 5,000 employees in WDTX—including some who may be potential witnesses—and its U.S. corporate headquarters is in Austin. Given that NXP is one of the WDTX's largest employers and given that NXP may be providing infringing components in this case, NXP's significant presence in this District weighs against transfer. *See, e.g., Tex. Data Co., L.L.C., v. Target Brands, Inc.*, 771 F.Supp.2d 630, 647 (E.D. Tex. Jan. 12, 2011) (holding that third-party manufacture of accused product within the transferor district "creates" a local interest). The Court notes that even if NXP were excluded from the Court's analysis of this factor, this factor would still slightly weigh against transfer.

Accordingly, given that Apple's presence in both districts is neutral in terms of transfer, but Fintiv and NXP's combined presence weighs against transfer, the Court finds that the local interest in having localized interests decided at home weighs against transfer.

### g.   Familiarity of the forum with the law that will govern the case

Both parties agree that this factor is neutral. ECF No. 40 at 10 (Apple), ECF No. 45 at 10 (Fintiv). The Court also agrees.

### h.   Avoidance of unnecessary problems of conflict of laws or in the application of foreign law

Both parties agree that this factor is neutral. ECF No. 40 at 10 (Apple), ECF No. 45 at 10 (Fintiv). The Court also agrees.

### i.   Conclusion

Having found that the access to proof factor slightly weighs in favor of transfer while court congestion and localized interests weigh against transfer with the other factors being neutral, the Court finds that Apple has not met its "heavy burden" to demonstrate that NDCA is "clearly more convenient." *Volkswagen II*, 545 F.3d at 314 n.10, 315; *QR Spex*, 507 F.Supp.2d at 664.

### IV.    Discussion regarding alternative motion to transfer to Austin

Apple's alternative motion is to transfer this case to the Austin Division because the Austin Division is clearly more convenient than the Waco Division given that there are no sources of proof in the Waco Division and Fintiv has an office and employees in Austin, but not in Waco. ECF No. 40 at 10. Fintiv does not object to transferring this case to the Austin Division. ECF No. 45 at 10.

The Court agrees that the Austin Division is more convenient than the Waco Division for the reasons Apple has described and because NXP has as significant presence in Austin but not in Waco. In short, whatever facts weigh against transfer to NDCA from WDTX also weigh in favor of transferring to Austin from Waco. Therefore, the Court finds that Apple has met its "heavy burden" of demonstrating that Austin is "clearly more convenient."

### V.    Conclusion

It is therefore **ORDERED** that Apple's motion for transfer venue to the Northern District of California is **DENIED**. It is further **ORDERED** that Apple's alternative motion is **GRANTED** and that the above-styled case be **TRANSFERRED** to the Austin Division but remain on the docket of United States District Judge Alan D Albright and according to the scheduling order that was entered in this case on June 10, 2019.

SIGNED this __10ᵗʰ__ day of September, 2019.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE